IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MARY JANICE MCGOWAN PARKER,   :
   :
      Plaintiff,   :     CIVIL ACTION FILE
v.   :
   :     NO. 1:23-cv-03952-JPB-WEJ
   :
LEXISNEXIS RISK SOLUTIONS, INC.,   :
   :     **<u>JURY TRIAL DEMANDED</u>**
      Defendant.   :
_____:

FIRST AMENDED AND SUPPLEMENTAL **COMPLAINT FOR DAMAGES**

**INTRODUCTION**

1. COMES NOW Plaintiff, MARY JANICE MCGOWAN PARKER

   ["Plaintiff"], and files this First Amended and Supplemental Complaint for

   damages against Defendant, LEXISNEXIS RISK SOLUTIONS, INC.

   ["LexisNexis"], for violations of the Fair Credit Reporting Act, 15 U.S.C. §§

   1681 *et seq.* ["FCRA"].

2. Plaintiff is a seventy-three-year-old retiree and the victim of LexisNexis

   mixing her consumer report with information belonging to a different person,

   and other violations of the FCRA.

1

3. In the fall of 2021, Plaintiff requested her consumer reports from LexisNexis and several other credit reporting agencies after she experienced a barrage of debt collection activity that was directed toward another person, Janice S. Parker, but that was somehow connected to her residential address.

4. When Plaintiff received her report from LexisNexis, she realized that LexisNexis had combined her personal information with that of Janice S. Parker—the actual debtor the collection agencies were trying to both collect from and sue — and had included inaccurate information in her file, including property deed records, insurance policy records, and auto insurance claims— presumably belonging to Janice S. Parker.

5. None of the other credit reporting agencies that she had requested credit reports from aside from LexisNexis had mixed any of Janice S. Parker's personal information or account information into Plaintiff's credit files.

6. Despite the FCRA requiring credit reporting agencies such as LexisNexis to follow reasonable procedures to assure maximum possible accuracy of its consumer reports, LexisNexis improperly combined Plaintiff's personal information with the personal information of Janice S. Parker into a single mixed file. It did so despite these two persons having different social security

numbers, different dates of birth, substantially different names, and having lived in completely different states.

7. Even after Plaintiff disputed the inaccurate information with LexisNexis several times and alerted it to the fact that her file had been mixed with another individual, LexisNexis repeatedly failed to both correct and fully disentangle Plaintiff's and the other individual's information.

8. In fact, LexisNexis continued to publish copies of Plaintiff's consumer report containing inaccurate and harmful information to third parties despite being made aware that it had mixed her file with that of another individual.

9. After sending several dispute letters and spending countless hours trying to get LexisNexis to correct its mixed file on her, Plaintiff is still unsure of the extent that LexisNexis has continued to mix her file with Janice S. Parker as LexisNexis has refused to provide her with full copies of her LexisNexis consumer report.

10. As a result of LexisNexis' actions, Plaintiff has experienced damages and now seeks redress.

## SUBJECT MATTER JURISDICTION

11. Subject matter jurisdiction in this Court is proper pursuant to 15 U.S.C. § 1681p.

12. Venue lies properly in this district pursuant to 28 U.S.C. §1391(b).

## PARTIES AND PERSONAL JURISDICTION

13. Plaintiff is a resident of this State, District and Division and is authorized by law to bring this action.

14. Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

15. LexisNexis is a consumer reporting agency ("CRA") as defined by the FCRA, 15 U.S.C. § 1681a(f).

16. LexisNexis is a Georgia Corporation that regularly conducts substantial business in the State of Georgia

17. LexisNexis may be served by personal service upon its current registered agent in the State of Georgia, to wit: CT Corporation System, 289 Culver St., Lawrenceville, GA 30046-4805, Gwinnett County.

18. Alternatively, LexisNexis may be served at its headquarters and the office location of several of its senior officers, including its CEO and Secretary, at 1000 Alderman Drive, Alpharetta, GA 30005, USA.

19. Alternatively, LexisNexis may also be served at its principal place of business at 1105 North Market St., Suite 501, Wilmington, DE, 19801, USA.

## THE STATUTORY FRAMEWORK OF THE FCRA AND A BRIEF BACKGROUND ON MIXED FILES

20. The FCRA requires a CRA such as LexisNexis to "follow reasonable procedures to assure maximum possible accuracy of the information" when preparing a consumer report. 15 U.S.C. § 1681e(b).

21. The FCRA also requires that when a consumer notifies a CRA that the consumer disputes the accuracy of any item of information in the consumer's file, the CRA must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file…before the end of the 30-day period beginning on the date on which the agency receives the notice from the dispute form the consumer or reseller." 15 U.S.C. § 1681i(a)(1)(A).

22. When conducting a reasonable reinvestigation into the dispute, the CRA must "review and consider all relevant information submitted by the

consumer…with respect to such disputed information." 15 U.S.C. § 1681i(a)(4).

23. The CRA must complete the reinvestigation within 30 days, or within 45 days if a CRA receives information from the consumer during that 30-day period which is relevant to its reinvestigation.  15 U.S.C. § 1681i(a)(1)(A)-(B).

24. Upon completion of an investigation, the CRA must delete or modify information that is found to be inaccurate or incomplete, or that which cannot be verified. 15 U.S.C. § 1681i(a)(5)(A)(i).

25.  The CRA must send a consumer written notice of the results of the reinvestigation no later than 5 business days after completion of the reinvestigation. 15 U.S.C. § 1681i(a)(6)(A).

26. When providing notice of the reinvestigation results to a consumer, the CRA must also include:

   a.   A statement that the reinvestigation is completed;

   b.   The consumer's report based on the consumer's file as the file is revised as a result of the reinvestigation;

    c.   A notice, if requested by a consumer, that describes the process used to determine the accuracy and completeness of the information;

    d.   A notice that the consumer has a right to add a statement to the consumer's file disputing the accuracy of the information; and

    e.   A notice that the consumer has a right to request the CRA furnish notifications.

    15 U.S.C. § 1681i(a)(6)(B).

27. The FCRA also requires that, upon the request of a consumer, the CRA provide the consumer with all the information in the consumer's file at the time of the request. 15 U.S.C. § 1681g(a).

28. The FCRA also prohibits a CRA from furnishing a consumer report on a consumer unless it has reason to believe that the person who gets the report intends to use the information in connection with a credit transaction, insurance underwriting, or other legitimate business purpose involving the consumer on whom the information is to be furnished. 15 U.S.C. § 1681b(a)(3).

29. The FCRA requirements are are important, because they help CRAs ensure that the information in their consumer reports are accurate, and protect consumer privacy.

30. The accuracy of consumer reports is essential in our economy because those reports are used for obtaining credit, receiving loans, gaining employment, obtaining insurance, securing housing, and other purposes.

31. One of the biggest problems within the credit reporting industry is the mixed file. A mixed file occurs when one consumer's information is placed into the credit file of another consumer.

32. Matching procedures which require less than an exact match of information to a consumer file are the primary cause of CRAs mixing one consumer's file with another within its system.

33. Such mixed files create a false description of a consumer's credit history.

34. Mixed files also result in the disclosure of a consumer's confidential financial and personal information to persons who should not receive it.

35. In addition to having a person's confidential personal and financial information wrongly inserted into the credit file of another consumer or that other consumer's information being wrongfully inserted into that person's

credit file, mixed file victims are often plagued with significant adverse effects, such as collection activity due to the inaccurate credit reporting or being unable to obtain credit at a favorable rate (if at all).

36. Mixed files can also lead to consumers being wrongfully targeted for collection litigation when their information is mixed with a person that is a debtor with one or more defaulted accounts.

37. Mixed file victims often spend significant time, effort, and resources trying to correct the erroneous mixed information.

38. Mixed files occur despite consumers' having unique personal identifying information, such as social security numbers. This is usually because the CRAs' matching logic allows information to be included in a consumer's file even when the Social Security number reported with the information is different than the Social Security number on the consumer's file.

39. Mixed files are not a new phenomenon. The CRAs have known about mixed files for over forty (40) years. *See Thompson v. San Antonio Retail Merchants Ass'n*, 682 F.2d 509 (5th Cir. 1982).

40. All CRAS should also be aware of the regulatory history relating to mixed files and the CRAs.  In the 1990's, the Federal Trade Commission ("FTC")

filed a lawsuit against the three largest credit reporting agencies, Equifax, Trans Union, and Experian's predecessor TRW, because of their failure to comply with various mandates of the FCRA, including the mixing of consumers' files.

41. Around that same time in the 1990's, the Attorneys General of a number of states also filed a lawsuit against Equifax, Trans Union and Experian's predecessor TRW, because of their failure to comply with the FCRA, including the mixing of consumers' files.

42. In 1995, Equifax signed a Consent Order with the FTC in which it agreed to follow reasonable procedures to assure maximum possible accuracy of the information concerning the consumer about whom the consumer report relates; it specifically included following reasonable procedures to avoid the occurrence of mixed files, including, but not limited to, mixing of files as the result of entry of data by subscribers when seeking consumer reports.

43. To help assure maximum possible accuracy of its reports, larger CRAs have all agreed that for matching and identification purposes, at least two of four criteria, which included a consumer's name, social security number, date of birth, or furnisher account number, had to match.

44. Nevertheless, mixed files continue to remain a significant source of credit reporting errors for CRAs like LexisNexis resulting result in major credit problems for consumers, including Plaintiff.

### FACTS OF PLAINTIFF'S MIXED FILE WITH LEXISNEXIS

45. On or about September 3, 2021, Plaintiff made an online request for a copy of her consumer report from LexisNexis.

46. Rather than provide Plaintiff with her report as required by the FCRA, LexisNexis told Plaintiff it could not process her request because it was "unable to locate a file sufficiently matching [Plaintiff's] data."

47. After Plaintiff was unable to obtain a copy of her consumer report from LexisNexis' website, she called and spoke to a LexisNexis customer support representative, Leo, who advised her that she would need to provide additional documentation, such as her social security card, before LexisNexis would provide her with a copy of her consumer report.

48. On or about September 6, 2021, Plaintiff emailed the requested documentation to LexisNexis, including two Social Security cards which showed both her married and maiden names, and LexisNexis later confirmed receipt of the documents.

49. On or about September 17, 2021, LexisNexis generated a consumer report, which it then sent to Plaintiff.

50. The consumer report dated September 17, 2021 was more than 175 pages and included over 400 items of information that did not belong to Plaintiff, but to another individual named Janice S. Parker. The report indicated that this inaccurate information had been provided to at least one of Plaintiff's creditors and an insurance company. The report also indicated that Plaintiff's information had been furnished to companies who were not involved in a transaction with her, and who were not entitled to receive her information.

51. On or about October 6, 2021, Plaintiff mailed a dispute to LexisNexis along with an 18-page attachment identifying the inaccurate information that was included on her September 17, 2021 consumer report.

52. In her dispute letter, Plaintiff explains how the mixed file is likely the root cause or origin of LVNV trying to serve Janice S. Parker with a debt collection lawsuit at Plaintiff's address and how the issue has been ongoing for quite some time and has caused her much distress.

53. On or about November 10, 2021, LexisNexis sent Plaintiff a letter which informed her that LexisNexis was "unable to authenticate [her] identity and

therefore [could not] process [her] request." This letter did not provide a copy of an updated consumer report or mention either Plaintiff's dispute or the results of any investigation into Plaintiff's dispute.

54. LexisNexis did not correct the disputed information in response to her October 2021 dispute.

55. On or about December 3, 2021, Plaintiff sent a second dispute letter to LexisNexis and again provided the 18-page attachment she had sent with her first dispute that identified the inaccurate information LexisNexis included in its September 17, 2021 consumer report.

56. In Plaintiff's second dispute letter, she expressed frustration that LexisNexis said it could not authenticate her as she had already sent it her social security cards as previously requested *and* had already been sent a copy of the disputed consumer report. Moreover, she expressed concern that LexisNexis' mixing of her information with another individual was likely causing her to continue to receive collection letters that were intended for the other individual.

57. On or about December 12, 2021, LexisNexis again sent Plaintiff a letter informing Plaintiff that it was unable to authenticate her identity or process

her request. This letter did not contain a copy of her consumer report and did not mention Plaintiff's disputes or include results of any investigation into Plaintiff's disputes.

58. On or about January 20, 2022, Plaintiff sent LexisNexis a third dispute letter. This time, Plaintiff included a typed attachment identifying the inaccuracies included on her report as well as several additional documents to authenticate her identity. These additional documents included the two social security cards she had previously provided to LexisNexis, her Georgia driver's license, and several account statements of hers from American Express, Bank of America, and Marriott Bonvoy.

59. On or about February 24, 2023, LexisNexis sent Plaintiff a fourth letter saying it could not authenticate her identity. This time, however, unlike the previous letters she had received in response to her disputes, the letter mentioned that LexisNexis had "initiated the reinvestigation process for the data [Plaintiff] disputed, however until [Plaintiff's] identity is authenticated, [LexisNexis] cannot provide [Plaintiff] with details of the reinvestigation." This letter further requested that she send additional identifying information. It did not contain a copy of her consumer report.

60. On or about April 7, 2022, Plaintiff called LexisNexis and spoke to another representative, Jason, to inquire about the status of her disputes. During this phone call, Plaintiff was informed that the disputed information was corrected. Plaintiff was told that LexisNexis would mail her a copy of her corrected consumer report in 7-10 business days, and also send her a letter with a URL/pin number.

61. Following her phone call to LexisNexis, Plaintiff received a copy of her consumer report dated April 7, 2022. She was shocked to see that LexisNexis had not just removed the inaccurate information which belonged to Janice S. Parker but had also removed almost all of Plaintiff's personal information as well.

62. LexisNexis did not send Plaintiff written results of its reinvestigations of her disputes or some of the other information required by the FCRA, § 1681i(a)(6)(A).

63. On or about May 3, 2022, Plaintiff mailed her fourth dispute letter to LexisNexis. In her dispute letter, she explained how LexisNexis had removed almost everything—even her accurate personal information. She requested that LexisNexis send her a full file disclosure and that all of her

undisputed and accurate personal information be returned and included in her file with LexisNexis. She then again provided copies of her social security cards (with her maiden and married names), her Georgia driver's license, and several different account statements.

64. On or about May 10, 2022, LexisNexis generated a new consumer report which was not a complete Full File Disclosure as Plaintiff had requested. Although the new report included more of Plaintiff's accurate personal information that had been missing in the April 7, 2022 consumer report, it was still missing some of her personal information which had previously been provided in her September 17, 2021 consumer report, including but not limited to a LexisNexis' C.L.U.E. Personal Property Report.

65. Despite the missing information and reports, LexisNexis included an additional report it had not previously shared with her called the LexisNexis National Credit File report ("NCF report"), which was dated January 26, 2022.

66. According to LexisNexis, an NCF report "provides businesses with online consumer credit information obtained from the three major credit reporting

agencies (Equifax, Experian, and TransUnion)" … "for the purpose of making decisions regarding the subject consumer."

67. The NCF report generated by LexisNexis shows that the State Farm Insurance Company ("State Farm") requested a report on Plaintiff for the purposes of insurance renewals.

68. Despite State Farm requesting a report on "PARKER, M JANICE MCGOWAN" who lives at "1644 BEAVER CREEK LN, SNELLVILLE GA 30078-6679", LexisNexis instead provided State Farm a report on "PARKER, JANICE S" whose current listed address was "24 VIVIAN CT, NEW ORLEANS LA 70131-0000" and whose social security number was listed as ending 3965.

69. LexisNexis knew that this NCF report it sent to State Farm was not Plaintiff's report because it knew that she was not named Janice S. Parker and that Plaintiff's social security number did not end with 3965, as Plaintiff had informed LexisNexis that this was not her name and not her social security number in her dispute letters where she provided proof of her name and her social security card with the number ending 7136, more than once.

70. The NCF report that LexisNexis sent State Farm with Janice S. Parker's information—not Plaintiff's information—included items listed as "Bad debt" and 37 accounts with over $39,000 marked as "PAST DUE".

71. As a result of LexisNexis sending an inaccurate report to State Farm, Plaintiff believes she has had to pay higher insurance premiums.

72. Plaintiff has been told by State Farm that they will continue to pull the same type of LexisNexis NCF report annually to rate her insurance. This republication of the mixed credit information by LexisNexis could therefore cause her insurance premiums to remain higher in perpetuity.

73. On or about August 8, 2023, Plaintiff again tried to order her complete LexisNexis consumer report on LexisNexis.com and received an email acknowledging the request.

74. On or about August 16, 2023, Plaintiff received two different letters from LexisNexis dated August 8, 2023 that were included in a single envelope.

75. The first letter included a subject line of "RE: Description of Procedure" which provided "only general information regarding the LexisNexis dispute procedure." The second letter included a subject line of "RE: Unable to Process Request" which stated that LexisNexis was unable to authenticate

her identity and could not process her request. It also mentioned various documents that she could submit to help authenticate Plaintiff's identity.

76. On or about August 17, 2023, Plaintiff emailed Consumer.Documents@LexisNexis.com to explain that she had received the letters from LexisNexis and that she wished to receive a *full and complete* copy of her LexisNexis consumer report. She also included an attachment with the top portion of the LexisNexis letters, her Georgia driver's license, her two social security cards (with both her married and maiden names), and the top of an account statement showing her name and address.

77. After Plaintiff sent her August 17, 2023 email to LexisNexis, she received an email confirmation from LexisNexis informing her that it received her email and was currently reviewing her communication.

78. On or about September 1, 2023, Plaintiff received a letter from LexisNexis dated August 24, 2023, with a link and a PIN to access her consumer report online.

79. The report she was able to access, however, was not a full disclosure of LexisNexis information relating to her as she had requested in her August 8, 2023 correspondence. Notably, the report failed to include any NCF report

or C.L.U.E. report, which had been contained in prior disclosures. The report did not include all her accurate information that had been on previous reports. The report included an inaccurate email address.

80. Plaintiff is therefore unaware of all the information that LexisNexis has in her file or whether the mixing of her information with that of Janice S. Parker has been resolved.

81. On or about September 11, 2023, Plaintiff mailed another dispute letter to LexisNexis. In her dispute letter, she said she received the August 24, 2023 report and was concerned because it does not appear to be the full file that she requested, and omitted certain reports that were previously provided to her. She also said that almost all of her information has been improperly deleted from her reports. She stated that there was a new email address that was not hers and she identified that address. She asked LexisNexis to delete it. She again asked for her full and complete LexisNexis report, and her entire file including all the reports it has on her.

82. Plaintiff received a letter from LexisNexis dated September 18, 2023, that was the same form letter she had previously received. In the letter LexisNexis stated that it was unable to authenticate her identity and could

not process her request. It also mentioned various documents that she could submit to help authenticate Plaintiff's identity.

83. A few days later, Plaintiff received the same form letter about being unable to process her request, this time dated September 20, 2023.

## FIRST CLAIM FOR RELIEF

### (Negligent Noncompliance with FCRA)

84. Plaintiff realleges and incorporates paragraphs 1 through 83.

85. LexisNexis negligently failed to comply with the requirements of the FCRA, including but not limited to, 15 U.S.C. §§1681b, e, g and i.

86. As a result of LexisNexis' failure to comply with the requirements of the FCRA, Plaintiff has suffered and continue to suffer, actual damages, including economic loss, unfavorable credit-based insurance pricing, damage to reputation, invasion of privacy, emotional distress, frustration, anxiety, embarrassment, humiliation, lost time and labor, and significant interference with their normal and usual activities for which she seeks damages in an amount to be determined by the jury.

87. Plaintiff also requests attorney fees and costs pursuant to 15 U.S.C. § 1681o(a).

## SECOND CLAIM FOR RELIEF

### (Willful Noncompliance with FCRA)

88. Plaintiff realleges and incorporates paragraphs 1 through 83.

89. LexisNexis willfully failed to comply with the requirements of the FCRA, including but not limited to, 15 U.S.C. §§1681b, e, g and i.

90. As a result of LexisNexis' willful failure to comply with the requirements of the FCRA, Plaintiff has suffered and continues to suffer, actual damages, including economic loss, unfavorable credit-based insurance pricing, damage to reputation, invasion of privacy, emotional distress, frustration, anxiety, embarrassment, humiliation, lost time and labor, and significant interference with her normal and usual activities for which she seeks damages in an amount to be determined by the jury.

91. At all times pertinent hereto, the conduct of LexisNexis, as well as that of its agents, servants and/or employees, was intentional, willful, and/or in reckless disregard for federal law and the rights of Plaintiff.

92. Plaintiff seeks punitive damages in an amount to be determined by the jury.

93. Plaintiff also requests attorney fees and costs pursuant to 15 U.S.C. § 1681n(a).

## JURY TRIAL DEMAND

Plaintiff demands a jury trial on all claims.

## DOCUMENT PRESERVATION DEMAND

Plaintiff hereby demands that LexisNexis take affirmative steps to preserve all communications, notes, reports, recordings, data, logs, emails, phone records, dialer records, documents and other tangible things that relate to: the allegations herein, Plaintiff, the events described herein, any third party associated with such, and any account or number or symbol relating to any of them. These materials are very likely relevant to the litigation of this claim.

If LexisNexis is aware of any third party who has possession, custody, or control of any such materials, Plaintiff demands that LexisNexis request that such third party also take steps to preserve the requested materials. This demand shall not be deemed to narrow the scope of any independent document preservation duties of LexisNexis.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:
On the First Claim for Relief:

1. Actual damages to be determined by the jury; and
2. Attorney fees.

On the Second Claim for Relief:

1. Actual damages to be determined by the jury;

2. Punitive damages to be determined by the jury; and

3. Attorney fees.

On All Claims for Relief:

1. Costs and expenses incurred in the action, and

2. Such other and further relief as may be necessary, just and proper.

DATED this 29th day of November, 2023.

Respectfully submitted,

**SKAAR & FEAGLE, LLP**

by: <u>s/ *James M. Feagle*</u>
   James M. Feagle
   Georgia Bar No. 256916
   jfeagle@skaarandfeagle.com
   Chelsea R. Feagle
   Georgia Bar No. 110863
   cfeagle@skaarandfeagle.com

   Cliff R. Dorsen
   Georgia Bar No. 149254
   cdorsen@skaarandfeagle.com
   2374 Main Street
   Suite B
   Tucker, GA 30084

404 / 373-1970
404 / 601-1855 fax


Kris Skaar
Georgia Bar No. 649610
kskaar@skaarandfeagle.com
Justin T. Holcombe
Georgia Bar No. 552100
jholcombe@skaarandfeagle.com
133 Mirramont Lake Drive
Woodstock, GA  30189
770 / 427-5600
404 / 601-1855 fax

Robert S. Sola
*Pro Hac Vice*
rssola@msn.com
Robert S. Sola, P.C.
1500 SW First Avenue, Suite 800
Portland, OR 97201
Telephone: (503) 243-4546